UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL M. S.,

                                    Plaintiff,

v.                                                    5:24-cv-379 (BKS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:
OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION        GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
  *Counsel for Defendant*
6401 Security Blvd.
Baltimore, MD 21235


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **ORDER AND REPORT-RECOMMENDATION**

Daniel M. S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Commissioner of Social Security's ("Commissioner") denial of his request

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Dkt. No.

1. Plaintiff did not consent to the disposition of this case by a Magistrate Judge. Dkt. No. 3.

Both parties filed briefs which the Court treats as motions under Federal Rule of Civil Procedure

Rule 12(c). Dkt. Nos. 7, 10, 12. For the reasons set forth below, the undersigned recommends

the Court deny Plaintiff's motion and affirm the Commissioner's decision.

## I.    BACKGROUND

Plaintiff was born in 1962 and completed two years of college.  T. at 292, 326.[1]  He also holds an accounting and bookkeeping management certificate and a business certificate.  *Id.* at 326.  His most recent employment was as an accounting and payroll clerk which he performed for approximately 10 years before he stopped working in 2016 because he was "burnt out" and needed to care for his disabled parents.  *Id.* at 476.  Plaintiff alleges he became unable to work as of February 25, 2020.  *Id.* at 292.

Plaintiff filed for DIB on June 7, 2021, and on March 7, 2022, Plaintiff filed for SSI.  *Id.* at 16, 292-303, 321-32, 363-72.  In his applications, Plaintiff claimed disability due to Type 1 diabetes, diabetic neuropathy and retinopathy, left wrist tenosynovitis, bilateral knee arthritis, high blood pressure, kidney issues, gastroparesis, and breathing/lung issues post bacterial pneumonia with an onset date of February 25, 2020.  *Id.* at 16, 292-303, 321-32, 363-72.  The Commissioner denied Plaintiff's initial application on October 20, 2021, and upon reconsideration on March 13, 2022.  *Id.* at 197-221.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 10, 2023, before ALJ Kenneth Theurer.  *Id.* at 138-60.  Plaintiff testified along with a vocational expert, Robert Baker.  *Id.*  The ALJ denied Plaintiff's claim for benefits on July 27, 2023, and the Appeals Council denied Plaintiff's request for review on February 16, 2024.  *Id.* at 1-7, 13-28.  Plaintiff timely filed his complaint on March 19, 2024, seeking this Court's review.  Dkt. No. 1.

---

[1] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson*, 817 F.2d at 985; *see also Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.").  The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 587 U.S. 471, 475 (2019).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id.*

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski*, 946 F.3d at 157.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  In a similar vein, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).  "The court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *Hopson v. Comm'r of Soc. Sec.*, No. 20-CV-6528 (LTS) (RWL), 2022 WL 1749930, at *2 (S.D.N.Y. Jan. 12, 2022).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117,

130-31 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

## III.    DISCUSSION

The ALJ concluded Plaintiff was severely impaired but not disabled within the meaning of the Social Security Act because he could perform past relevant work.  T. at 19, 23-24.  In particular, the ALJ concluded Plaintiff had the residual functional capacity to perform sedentary work with limitations that did not prevent him from performing "past work as actually and generally performed."  *Id.* at 23-24.

Plaintiff argues the ALJ's residual functional capacity determination was not supported by substantial evidence because the ALJ improperly evaluated the medical opinion of his primary care physician, Todd Lentz, M.D.  Dkt. No. 7 at 6-13; *see also* T. at 611-15 (Dr. Lentz's opinion dated June 22, 2023); Dkt. No. 12 at 1-3.  In response, the Commissioner argues the ALJ properly evaluated Dr. Lentz's opinion and briefly, but adequately, explained that evaluation. Dkt. No. 10 at 7-10.  The Commissioner accordingly argues the ALJ's residual functional capacity determination was supported by substantial evidence.  *Id.* at 5-7, 11-13.

For the following reasons, the undersigned concludes substantial evidence supports the ALJ's evaluation of Dr. Lentz's medical opinion.  *See* T. at 23.  The undersigned further concludes substantial evidence supports the ALJ's residual functional capacity determination. *See id.* at 20-23.  Accordingly, the undersigned recommends the Court deny Plaintiff's motion and affirm the Commissioner's decision.

### A.    Dr. Lentz's Opinion and the ALJ's Decision

In support of his claim for benefits, Plaintiff submitted several years of treatment records from various healthcare professionals.  *See generally* T. at 29-137, 431-75, 482-610.  Plaintiff

also submitted the June 22, 2023, medical opinion from Dr. Lentz. *See id.* at 611-615.[3] Dr. Lentz diagnosed Plaintiff with type 1 diabetes mellitus, peripheral artery disease, and osteomyelitis of the right toes. *Id.* at 611. Dr. Lentz opined Plaintiff had a "poor" prognosis, but did not elaborate for which specifically identified condition Plaintiff had a poor prognosis. *Id.* Dr. Lentz indicated these impairments caused Plaintiff symptoms of fatigue, difficulty walking, infections/fevers, foot ulcers, and vascular disease/leg cramping. *Id.* Dr. Lentz did not identify his clinical findings that support Plaintiff's symptoms. *Id.* at 612. He was asked "What are your clinical findings?" to which Dr. Lentz responded, "This is vague, ask better questions." *Id.*

Based on his evaluation of Plaintiff's impairments, Dr. Lentz opined that if Plaintiff was placed in a competitive work environment, he could sit five minutes at one time before needing to get up. *Id.* He similarly opined Plaintiff could stand five minutes at one time before needing to sit down or walk around. *Id.* In total, Dr. Lentz concluded Plaintiff could sit, stand, or walk less than two hours in an eight-hour workday with normal breaks, and would need permission to shift positions at will from sitting, standing, or walking. *Id.* Dr. Lentz opined Plaintiff could rarely[4] lift and carry less than ten pounds, and never lift and carry any greater weight. *Id.* Further, Dr. Lentz opined Plaintiff could rarely perform any other exertional and postural activities. *Id.* at 613. Finally, Dr. Lentz opined Plaintiff's impairments would cause him to take unscheduled breaks "a lot," to be off task more than twenty percent of the workday, and to miss work more than four days per month. *Id.*

---

[3] Plaintiff also submitted the opinion of his ophthalmologist, Arthur Coli, M.D., addressed *infra*. T. at 428-30.

[4] "Rarely" means Plaintiff could perform the exertional and postural activities between "1% and 5% of an eight-hour workday." T. at 612.

The ALJ found Dr. Lentz's medical opinion to be "less persuasive." *Id.* at 23.  The ALJ concluded Dr. Lentz's opinions about Plaintiff being "limited to less than sedentary exertional level" and his other restrictive exertional and postural limitations were "not consistent with his own treating records and are not supported with ties to clinical findings." *Id.*

### B.    Legal Standard

For DIB and SSI claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. §§ 404.1520c(c) and 416.920c(c).  Under this regulation, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Schillo*, 31 F.4th at 71 n.1; *Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).  The ALJ is specifically required to "explain how [h]e considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Loucks*, 2022 WL 2189293, at *1; *see generally Jackson v.*

*Kijakazi*, No. 20-CV-7476 (JLC), 2022 WL 620046, at *18 (S.D.N.Y. Mar. 3, 2022) ("It is not sufficient to cite to some objective medical evidence in the record and simply conclude that an opinion is consistent with other evidence in the file rendering it persuasive.").  "If the ALJ fails adequately to explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see, e.g.*, *Loucks*, 2022 WL 2189293, at *2 (remanding where "the ALJ committed [harmful] procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"); *Jackson*, 2022 WL 620046, at *18-20 (remanding because the ALJ misread the record, and did not adequately explain his evaluation of the supportability and consistency factors in light of the relevant evidence).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").  Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2), 416.920c(c)(2); *see also White v. Comm'r of Soc. Sec.*, No. 20 CIV. 6222 (SLC), 2022 WL 951049, at *5 (S.D.N.Y. Mar. 30,

2022) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D.*, 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *see also Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021).

## C.    The ALJ's Evaluation of Dr. Lentz's Opinion

Plaintiff takes issue with the ALJ's review of Dr. Lentz's opinion arguing it is legally insufficient because the ALJ did not adequately explain the supportability and consistency factors and he ignored "highly probative" evidence that supported Dr. Lentz's limitations. Dkt. No. 7 at 11-14. Plaintiff further asserts that the ALJ "discredited all other opinions of record," *id.* at 13, and "relied on his lay opinion to reject the functional assessments of Plaintiff's physical abilities." *Id.* at 14. The Commissioner counters substantial evidence supports the finding that Plaintiff could perform sedentary work, even with his limitations. Dkt. No. 10 at 7. In furtherance of that general argument, the Commissioner posits the ALJ did not reject all other opinions, and Dr. Lentz's overly restrictive limitations were neither consistent with nor supported by his own records, other medical evidence in the record, and other opinions. *Id.* at 8-15. Although the Commissioner acknowledges the ALJ gave an "admittedly brief analysis of Dr. Lentz's opinion," *id.* at 10, the Court agrees substantial evidence supports the ALJ's conclusion that Dr. Lentz's opinion was entitled to less persuasive value. *See* T. at 23; *see also Loucks*,

2022 WL 2189293, at *2 ("Despite the ALJ's procedural error, we could affirm if a searching review of the record assures us that the substance of the regulation was not traversed.").

       *1.*     *Supportability*

      Dr. Lentz presented no objective medical evidence and offered no supporting explanation for his opinion that Plaintiff had a need to take unscheduled breaks and a limited ability to sit, stand, or walk for any appreciable periods of time, stay on-task, and maintain regular attendance; or that he could "rarely" perform numerous postural work activities. *See* T. at 612-13; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As noted, the ALJ observed that Dr. Lentz's overly restrictive and conclusory opinion "was not consistent with his own treating records and . . . not supported with ties to clinical findings." *Id*. at 23. Although the supportability factor is concerned with "objective medical evidence . . . presented by [the] medical source," 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), not the entire record, Dr. Lentz failed to present *any* objective medical evidence in support of his medical opinion. *See* T. at 611-15. "The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations." *Carmen M.*, 2021 WL 5410550, at *4. Dr. Lentz failed to offer any explanations or objective medical evidence in support of his highly restrictive opinions about Plaintiff's functional limitations. *See* T. at 611-15. When asked in the check-the-box opinion form "What are your clinical findings," Dr. Lentz responded, "This is vague, ask better questions." *Id.* at 612.

      Moreover, a review of the records from Crouse Medical Practice, Dr. Lentz's practice group, shows that Dr. Lentz's opinion is unsupported by his own treatment notes, and the notes of other providers in his practice. *See generally id.* at 434-69, 495-534. Although Dr. Lentz noted in his opinion that Plaintiff had "difficulty walking," "foot ulcers," and "vascular

disease/leg cramping," *id.* at 611, at virtually every encounter with Dr. Lentz and other providers at Crouse Medical Practice, Plaintiff repeatedly exhibited a normal gait, even after two of his toes were amputated and even when Plaintiff complained of tingling and numbness in his feet. *Id.* at 439, 442, 452, 457, 462, 467, 496, 499, 503, 507, 511, 516, 521, 526, 529, 533.  Plaintiff himself denied "ambulatory dysfunction" at two encounters within the relevant time at issue.  *Id.* at 451, 461.  Plaintiff was noted to be walking for exercise, he planned to participate in a basketball camp, and he was repeatedly encouraged to continue walking and/or to get 150 minutes of moderate aerobic exercise on a weekly basis.  *Id.* at 441, 453-54, 458-59, 463-64, 468-69, 512-13, 517-18, 522-23, 527-28.

Dr. Lentz also noted in his opinion that Plaintiff had symptoms of "fatigue" and "infections/fevers."  *Id.* at 611.  However, although Plaintiff complained at times about feeling fatigued and deep breathing causing tightness on the right side where he previously had drainage tubes during a hospitalization for pneumonia, *id.* at 38-40, 495, 498, 501, Plaintiff repeatedly had normal respiratory exams.  *Id.* at 439, 442, 452, 457, 462, 467, 496, 499, 503, 507, 511, 516, 521, 526, 530, 533.  In each of the office visits specifically with Dr. Lentz, Plaintiff denied chest pain and shortness of breath.  *Id.* at 438, 441, 498, 495, 501, 529, 532.  He reported his breathing was "stable" since his hospitalization for pneumonia.  *Id.* at 438.  Thus, substantial evidence accordingly supports the ALJ's conclusion that Dr. Lentz's opinion lacked supportability.  *See Tejada*, 167 F.3d at 773; *see, e.g.*, *Krystle H. v. Comm'r of Soc. Sec.*, No. 3:20-CV-855 (TWD), 2022 WL 888225, at *6 (N.D.N.Y. Mar. 25, 2022) (concluding substantial evidence supported the ALJ's conclusion that a medical opinion was unpersuasive where it lacked a supporting explanation and citations to objective medical evidence); *Courtney L. W. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1233 (TWD), 2022 WL 685290, at *5 (N.D.N.Y. Mar. 8, 2022) (same).

2.    *Consistency*

Dr. Lentz's opinion is also inconsistent with evidence from other medical sources and nonmedical sources in the record.  *See* T. at 611-15; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  In evaluating this aspect of Dr. Lentz's opinion under the consistency factor, the ALJ concluded it was inconsistent with Dr. Lentz's own treatment records.  T. at 23.  These inconsistencies are illustrated by the review of the treatment records from Dr. Lentz and other providers in his group outlined above regarding Plaintiff's musculoskeletal exams and ambulatory abilities, and his normal respiratory findings.

A medical opinion's internal inconsistences, however, does not drive the assessment of the consistency factor.  *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Rather, "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *White*, 2022 WL 951049, at *5.  Although the ALJ in this case briefly addressed the consistency factor, which was inadequate according to Plaintiff, the Second Circuit has explained that an ALJ's decision can be affirmed if a searching review of the record indicates that the substance of the consistency factor was not traversed.  *See Loucks*, 2022 WL 2189293, at *2 ("Despite the ALJ's procedural error, we could affirm if a searching review of the record assures us that the substance of the regulation was not traversed.").  In *Loucks*, the Second Circuit applied this rule to the current regulations,[5] concluding the ALJ's error was harmful, and thus, could not be affirmed.  *See id.*  District Courts

---

[5] This rule—an exception to procedural error—was originally applied to the treating physician rule, a product of older regulations.  *See Estrella*, 925 F.3d at 95-96; *see generally* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources").  Under the current regulations, the treating physician rule no longer applies.  *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").

in this Circuit have accordingly applied this rule in cases where the current regulations govern the evaluation of medical opinion evidence. *See, e.g.*, *Dana Marie M. v. Comm'r of Soc. Sec.*, No. 6:21-CV-458 (GLS) (CFH), 2022 WL 2314560, at *7-8 (N.D.N.Y. June 28, 2022) (recommending that the Court affirm the ALJ's decision, despite the ALJ's failure to explain the consistency factor, because the substance of the consistency factor was not traversed); *Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102 (FPG), 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) (finding "the ALJ's procedural error harmless" because the substance of the supportability and consistency factors was "not traversed").

Here, the undersigned conducted a searching review of the record and concludes that— despite the ALJ's abbreviated explanation of the supportability and consistency factors—the substance of 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) has not been traversed. *See Loucks*, 2022 WL 2189293, at *2. Dr. Lentz's opinion concerning Plaintiff's need to take unscheduled breaks and his limited ability to sit, stand, or walk for prolonged periods of time, stay on-task, and maintain regular attendance, and only rarely perform all postural work activities is not consistent with the record as a whole. *See* T. at 611-14; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The undersigned accordingly concludes substantial evidence supports the ALJ's conclusion that the consistency factor weighs against these limitations. *See, e.g.*, *Dana Marie M.*, 2022 WL 2314560, at *7-8; *Ricky L.*, 2022 WL 2306965, at *4.

First, Dr. Lentz's highly restrictive limitations are inconsistent with the other medical opinions in this case. *Compare* T. at 611-14 (Dr. Lentz's opinion), *with id.* at 169-71 (Dr. Sharif-Najafi's opinion), 183-86 (Dr. Seok's opinion), 476-79 (Dr. Elke Lorensen's opinion).

The ALJ found these other opinions to be "generally persuasive." *See id.* at 22-23.[6]  None of

these physicians diagnosed Plaintiff with any condition or made any medical findings that would

support the highly restrictive limitations opined by Dr. Lentz.  *See id.* at 169-71, 183-86, 476-79.

Moreover, Dr. Lorensen's exam of Plaintiff revealed a normal gait and stance; a squat 40% of

full; normal chest and lungs; full range of motion in the cervical spine, shoulders, elbows,

forearms, wrists, fingers, and ankles; a reduced range of motion in the lumbar flexion and

extension, but full lateral flexion; slight reduced range of motion in the hips and knees, but

straight leg raising was negative; full and equal strength in upper and lower extremities; no

muscle atrophy; joints stable, nontender, and without abnormalities; and hand and finger

dexterity intact with full and equal grip strength bilaterally.  *Id.* at 478.

Dr. Lorensen ultimately opined that Plaintiff had "no gross limitations for sitting,

standing, walking, and using hands.  He has moderate limitations for bending, lifting, carrying,

and climbing."  *Id.* at 479.  Thus, Dr. Lentz's proposed limitations are accordingly inconsistent

with the opinion of Dr. Lorensen, and the opinions of Drs. Sharif-Najafi and Seok, whose

opinions largely comport with Dr. Lorensen's opinion; and Dr. Lentz's limitations are

inconsistent with Dr. Lorensen's exam of Plaintiff.  *Compare id.* at 169-71, 183-86, 476-79, *with*

*id.* at 611-14; *see generally* 20 C.F.R. § 416.920c(c)(2).  Additionally, the opinion of Plaintiff's

treating ophthalmologist, Dr. Arthur Coli, that Plaintiff "likely has poor night vision" but

otherwise has no other physical limitations, does not support the severe limitations opined by Dr.

Lentz.  *Compare id.* at 429, *with id.* at 611-14.

---

[6] Plaintiff's only challenge to these opinions is that the ALJ "discredited" them since the ALJ
found Plaintiff capable of sedentary work, rather than light work, because these other opinions
were rendered before Plaintiff had his second and third toes amputated.  *See* Dkt. No. 7 at 13-14;
*see also id* at 22-23.

Second, Dr. Lentz's proposed limitations are inconsistent with Plaintiff's treatment records overall. *Compare id.* at 611-14 (Dr. Lentz's opinion), *with id.* at 470-75, 482-94, 535-610 (Plaintiff's treatment records other than the records of Dr. Lentz and other providers in his medical group). There is no indication in Plaintiff's treatment records that a healthcare professional diagnosed him with any condition that would necessitate the highly restrictive functional limitations opined by Dr. Lentz. *See generally id.* at 470-75, 482-94, 535-610.

For example, Plaintiff's discharge summary after his hospitalization for pneumonia in February and March of 2020 indicates that physical and occupational therapy were recommended in a skilled nursing facility "due to weakness;" however, Plaintiff declined that recommendation. *Id.* at 38. Follow up treatment after discharge with an infectious disease specialist, Dr. James Demaio, in March of 2020 showed Plaintiff had "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the extremities." *Id.* at 555; *see also id.* at 560. His respiratory effort and lung exams were normal. *Id.* at 556, 560. He appeared healthy and well-nourished and had no neurologic weakness. *Id.* at 555, 560.

A week after accidentally shooting himself in the pinky finger with a BB gun, Plaintiff presented for treatment on July 3, 2021, in the emergency department at Upstate Community Campus. *Id.* at 471-75. His pulmonary, neurologic, and musculoskeletal exams were normal with the exception of the foreign body/BB in his left pinky finger. *Id.* at 473-74. After he had the BB removed from his left pinky finger on July 16, 2021, he was doing well and had no complaints. *Id.* at 482. His musculoskeletal and respiratory systems were normal. *Id.* at 483. The wound was healing well, and he had nearly normal range of motion with slightly decreased flexion in the finger. *Id.* at 484.

Ophthalmology visits during the relevant time show that on August 4, 2021, Plaintiff's visual acuity was only slightly decreased at 20/30 and 20/25. *Id.* at 537. He indicated his "vision has been good since last exam" with "no problems driving or seeing road signs." *Id.* He denied any respiratory symptoms or musculoskeletal symptoms. *Id.* His diabetic retinopathy "appears quiescent," in other words dormant, and there was no macular edema. *Id.* at 538. At the next visit approximately one year later on August 25, 2022, Plaintiff indicated his vision was unchanged since the last exam and he again reported that he "had no problems driving or seeing road signs." *Id.* at 540. He again denied respiratory symptoms or musculoskeletal symptoms. *Id.* His visual acuity was slightly changed at 20/50 and 20/25, *id.* at 541, and although the ophthalmologist indicated he had "potential for vision loss," his diabetic retinopathy once more "appears quiescent" and there was no macular edema appreciated. *Id.* at 542.

At a podiatry visit on February 16, 2022, Plaintiff exhibited normal muscle strength in both feet and ankles for plantarflexion, dorsiflexion, inversion and eversion, although on ambulation and stance, his calcaneus remained in a varus position with the arches remaining in a high position. *Id.* at 547. The podiatrist recommended diabetic shoes and also wanted Plaintiff to discontinue trimming his own toenails. *Id.* at 548. Plaintiff denied the need for these interventions and cancelled a follow up visit. *Id.* at 514. Plaintiff did return to the podiatrist on December 6, 2022, and although his muscle strength in both feet and ankles was normal, he was diagnosed with edema of the right foot and gangrene on the right second toe with cellulitis extending up to the ankle, and the third right toe was also noted to be cellulitic and red. *Id.* at 545. The podiatrist advised Plaintiff to go to the emergency room for evaluation of the gangrene. *Id.* at 546.

Plaintiff then presented at the Upstate Community Campus that same day on December 6, 2022, where he was admitted and underwent a procedure to amputate his second and third right toes due to osteomyelitis, and a stent was placed in his right superficial femoral artery. *Id*. at 579-610. He reported "difficulty ambulating secondary to right toe being very painful" on admission. *Id*. at 589. He was discharged on December 13, 2022, in a medically stable condition, *id.* at 590, with "pain well controlled on just Tylenol no need for further antibiotics on discharge." *Id.* at 588. Follow up visits at Upstate Community Campus on December 28, 2022, and January 4, 2023, revealed his incisions were well healed. *Id.* at 578, 576. He could "resume walking without restrictions" two weeks after the January 4, 2023, follow up encounter. *Id.* at 576. At an April 17, 2023, visit, he denied "symptoms of claudication with ambulation" and he denied "rest pain or non healing wounds." *Id.* at 571.

Thus, treatment records from the relevant period do not reference or comport with Dr. Lentz's functional limitations that Plaintiff needed to take unscheduled breaks at work, had a limited ability to stay on-task, had a limited ability to sit, stand, or walk for prolonged periods, or could rarely perform postural work activities, and could not maintain regular attendance at work. Dr. Lentz's opinion about these ostensible limitations is accordingly inconsistent with Plaintiff's other treatment records from the relevant period. *See* 20 C.F.R. § 416.920c(c)(2).

Finally, Dr. Lentz's proposed limitations are inconsistent with the non-medical evidence in this case, including Plaintiff's testimony. *Compare* T. at 611-614 (Dr. Lentz's opinion), *with id.* at 144-56 (Plaintiff's testimony). Plaintiff testified that he left his last full-time employment as a payroll clerk because he was "Burned out. Very stressful job for that amount of years, just needed a change." *Id.* at 146. Plaintiff then helped his aging parents and further acknowledged that "If I didn't have to take care of my parents, I could go back to that job but as I said, after that

amount of years, I already started to have stress and I decided it would be better for my health not to put myself in that situation." *Id.* at 148. However, Plaintiff denied having mental health treatment or impairments. *Id.* at 148-49. Plaintiff does claim that his pneumonia hospitalization in February of 2020 left him with low stamina; he has difficulty with his eyes due to his diabetes; and the amputated toes caused his gait to be "off quite a bit." *Id.* at 151-52. As noted above, these complaints are inconsistent with findings on medical exams. Moreover, in his function report, Plaintiff indicated that he has minimal problems with personal care, *id.* at 340, 371; he can prepare his own meals and do light cleaning and laundry "as tolerated" and does dishes daily. *Id.* at 341, 380. Additionally, he goes out three to five times a week, drives a car, and can go out alone. *Id.* at 342, 381.

In sum, Dr. Lentz's proposed limitations find little support in Plaintiff's treatment records or in his stated abilities. Plaintiff has not demonstrated that his eyesight, pneumonia, or BB gun injury support greater limitations than the ALJ's residual functional capacity determination. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive [residual functional capacity], and failed to do so."). Additionally, the ALJ considered Plaintiff's toe amputations by limiting him to sedentary work. T. at 20, 22. Thus, substantial evidence supports the ALJ's evaluation of Dr. Lentz's opinion. *See Tejada*, 167 F.3d at 773. While the ALJ's evaluation of Dr. Lentz's opinion under the relevant factors was briefly stated, a searching review of the record indicates that the ALJ's treatment of Dr. Lentz's opinion did not traverse the substance of the supportability and consistency factors. *See Loucks*, 2022 WL 2189293, at *2; *see, e.g.*, *Dana Marie M.*, 2022 WL 2314560, at *7-8; *Ricky L.*, 2022 WL 2306965, at *4. The undersigned accordingly recommends that the Court deny Plaintiff's challenge to the ALJ's evaluation of Dr. Lentz's opinion. *See generally* Dkt. Nos. 7, 12.

### D.       The ALJ's Residual Functional Capacity Determination

Plaintiff claims the ALJ's residual functional capacity determination "is unsupported by

substantial evidence" because the ALJ "failed to properly evaluate" Dr. Lentz's opinion.  Dkt.

No. 7 at 8.  For the reasons outlined above, the Court disagrees.  Additionally, while Plaintiff's

main critique of the ALJ's residual functional capacity determination is that the ALJ found Dr.

Lentz's opinion less persuasive, T. at 23, Plaintiff also briefly challenges the ALJ's review of the

other opinion evidence by asserting the ALJ wrongfully discredited all of the other opinions.  *See*

*id.* at 13-15.  However, in finding Dr. Lorensen's opinion was mostly "consistent with the record

as a whole," the ALJ noted that Plaintiff's toe amputations occurred after Dr. Lorensen's opinion

was issued and hence found the amputations supported "additional limitations" beyond Dr.

Lorensen's opined limitations.  T. at 22, 476-79.  Likewise, because the opinions of state agency

reviewers Dr. Sharif-Najafi and Dr. Seok were issued before Plaintiff's toe amputations, and

even though the ALJ found them "consistent with the opinion of Dr. Lorensen and the record as

a whole," the ALJ found limitations at the "sedentary exertional level" were appropriate.  *Id.* at

22-23, 169-71, 183-86.  Finally, the ALJ discounted the opinion of Dr. Coli, an ophthalmologist,

who opined that Plaintiff had no limitations beyond poor night vision.  *Id.* at 23, 428-30.  Dr.

Coli found no physical limitations, *id.* at 429, which the ALJ rightly rejected because it "appears

to rest at least in part on an assessment of . . . impairments outside the doctor's area of expertise"

and was "not consistent with the other opinions of record or the objective medical evidence."  *Id.*

at 23.

Thus, the Court finds no merit in Plaintiff's argument that the ALJ was "playing doctor"

and relied on his own lay opinion in determining the residual functional capacity.  Dkt. No. 7 at

14.  "In weighing medical evidence, the ALJ may choose portions of an opinion he finds

persuasive and reject those that are not." *Gutierrez v. Comm'r of Soc. Sec.*, No. 20-CV-10233(KHP), 2022 WL 2116718, at *11 (S.D.N.Y. June 13, 2022). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an [residual functional capacity] finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson,* 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

As explained above, substantial evidence supports the ALJ's evaluation of Dr. Lentz's opinion, *see Tejada*, 167 F.3d at 773, and the ALJ did not traverse substance of the regulations for evaluating medical opinion evidence, *see Loucks*, 2022 WL 2189293, at *2. Moreover, the undersigned has conducted a review of the ALJ's decision *and* the record, and finds no legal error or evidentiary deficiency in the ALJ's residual functional capacity determination. *See generally id.* (explaining the Court first "reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards," and then "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence."). The undersigned accordingly recommends that the Court reject Plaintiff's challenge to the ALJ's evaluation of the medical opinions and the residual functional capacity determination.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned concludes the ALJ's decision was based on the correct legal standards and substantial evidence supports his decision.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED**; and it is further

**RECOMMENDED** that the ALJ's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  March 3, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge